# Illinois Official Reports

## Appellate Court

---

### *People v. Moises*, 2015 IL App (3d) 140577

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAIME MOISES, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-14-0577 |
| Filed | August 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 14-DT-364, 14-TR-22164 through 14-TR-22166; the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James Glasgow, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Ryan Kosztya, of Law Offices of Ryan Kosztya, of Joliet, for appellee. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justice Lytton specially concurred, with opinion.<br>Justice Holdridge dissented, with opinion. |

¶ 1       The State charged defendant, Jaime Moises, with misdemeanor driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2012)) and several traffic offenses following a traffic stop. The State turned over a squad car video recording of defendant's traffic stop, which did not capture defendant's field sobriety tests because the arresting officer directed defendant to perform the tests in an area outside the view of the camera. Defendant filed a motion for discovery sanctions, arguing that the officer directing him to perform the tests off camera had the same effect as destroying or losing the videotape of the tests. The trial court granted defendant's motion, and the State appeals. We reverse and remand for further proceedings.

¶ 2                                       FACTS

¶ 3       The State charged defendant by traffic citation and complaint with misdemeanor DUI (625 ILCS 5/11-501(a)(2) (West 2012)), a headlight violation (625 ILCS 5/12-201(b) (West 2012)), improper lane usage (625 ILCS 5/11-709(a) (West 2012)), and operating an uninsured motor vehicle (625 ILCS 5/3-707 (West 2012)).

¶ 4       Defendant filed a motion for sanctions. The motion alleged that on the date of his arrest, defendant was driving his vehicle. Deputy M. Shaughnessy, who was driving a police squad car with an in-car camera system, stopped defendant's vehicle. In so doing, Shaughnessy activated the squad car camera while following defendant, and recorded the traffic stop. The video recording showed Shaughnessy directing defendant to an off-camera area in front of defendant's vehicle to perform field sobriety tests. While the squad car camera did not capture a video recording of the field sobriety tests, it does contain an audio recording of the conversation that occurred during the field sobriety tests.

¶ 5       The motion for sanctions alleged that Shaughnessy's action in directing defendant to perform the field sobriety tests in an area outside the view of the squad car camera had the same effect as if the police destroyed or lost the videotape of the field sobriety tests. Consequently, defendant argued, testimony from Shaughnessy regarding anything that would have been captured on the videotape, had the field sobriety tests been conducted within the view of the squad car camera, should be barred pursuant to the holding in *People v. Kladis*, 403 Ill. App. 3d 99 (2010).[1] The motion for sanctions also alleged that the conversations captured on the video recording during the field sobriety tests constituted eavesdropping in violation of sections 14-2 and 14-5 of the Criminal Code of 2012 (720 ILCS 5/14-2, 14-5 (West 2012)).

¶ 6       After hearing arguments, the trial court granted defendant's motion for sanctions and barred Shaughnessy and all other assisting deputies from testifying to or about any part of the

---

[1]We note that although defendant's motion cites the appellate court's decision in *Kladis*, 403 Ill. App. 3d 99, that decision was affirmed by our supreme court in *People v. Kladis*, 2011 IL 110920. In our analysis, we refer to the supreme court's decision.

traffic stop where Shaughnessy took defendant off camera, including, but not limited to, defendant's performance of the field sobriety tests. The court reasoned:

"[W]hen you look at Kladis and you look at all the cases preceding Kladis, here we have a situation where the video was not destroyed, but the video was never really made. A video is on, but it does not capture the purposes so the Court can make the appropriate decisions at trial or any place else.

So it rises almost to the level of they had it, but what's contained on it, we're just supposed to *** take a witness's word for it."

¶ 7    The trial court expressly declined to sustain defendant's motion on the eavesdropping grounds.

¶ 8                                          ANALYSIS

¶ 9    On appeal, the State argues that the trial court erred in granting defendant's motion for sanctions and barring Shaughnessy's testimony regarding the field sobriety tests. Because no discovery violation occurred in this case, we reverse the trial court's ruling and remand for further proceedings.

¶ 10    A trial court's decision to impose sanctions for a discovery violation is reviewed for abuse of discretion. *People v. Kladis*, 2011 IL 110920, ¶ 23. "Generally, a court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v. Ortega*, 209 Ill. 2d 354, 359 (2004).

¶ 11    Discovery in misdemeanor cases is governed by case law and statutory provisions. *People v. Schmidt*, 56 Ill. 2d 572, 575 (1974). In *Schmidt*, the court enumerated the types of evidence that are discoverable in misdemeanor cases, including confessions of the defendant, evidence negating the defendant's guilt, the results of breathalyzer tests, and police reports for the purposes of impeachment of an officer. *Id.* In *Kladis*, 2011 IL 110920, ¶ 26, the court clarified that the list enumerated in *Schmidt* was not a "rigid list" that should "remain static." The *Kladis* court held that video recordings of traffic stops are discoverable in misdemeanor DUI cases under the holding of *Schmidt*, 56 Ill. 2d at 575. *Kladis*, 2011 IL 110920, ¶ 29. Contrary to the special concurrence, *Kladis* is not relevant here. No matter how you choose to characterize what happened here, it simply was not a "discovery violation." *Kladis* does not hold that the police must videotape everything they do. Even if that were the case, there is no discovery violation here. Defendant asked for the videotape; the State produced it. The special concurrence suggests that the reason the officer conducted the field sobriety test other than directly in front of the camera is somehow relevant to the issue of a discovery violation. This case is before us on an order granting discovery sanctions. I fail to understand how this police officer could commit a discovery violation even before arresting defendant. With all due respect, the suggestion outlined in the special concurrence is illogical. The special concurrence seems to confuse a motion for discovery sanctions with a motion to suppress. The dissent, of course, simply rewrites the statute adding provisions that the General Assembly did not. It adds the requirement that field sobriety tests be videotaped and that the failure to do so renders inadmissible any evidence regarding the test.

¶ 12    Recently, in *People v. Olsen*, 2015 IL App (2d) 140267, the Second District dealt with an identical issue. The only difference was in *Olsen*, the police officer testified at the hearing that he performed the test in front of defendant's car rather than in front of his patrol car for safety

- 3 -

reasons. *Id.* ¶ 5. The trial court granted defendant's motion for sanctions and the Second District reversed. *Id.* Citing to *People v. Borys*, 2013 IL App (1st) 111629, the *Olsen* court concluded that section 30 of the State Police Act (20 ILCS 2610/0.01 *et seq.* (West 2012)) is directory rather than mandatory, as it does not dictate a particular consequence for a failure to comply with its requirements. *Olsen*, 2015 IL App (2d) 140267, ¶ 17. The *Olsen* court further agreed that there was no discovery violation because defendant asked for the videotape and the State produced it. *Id.* ¶¶ 18-20. Quoting *People v. Strobel*, 2014 IL App (1st) 130300, ¶ 11, the *Olsen* court held that "[t]here is nothing in this record to support any inference or suggestion that the police or the prosecution intentionally or inadvertently destroyed any preexisting discoverable evidence." (Internal quotation marks omitted.) *Olsen*, 2015 IL App (2d) 140267, ¶ 21. Likewise, the *Olsen* court questioned the relevance of evidence regarding whether the officer could have performed the field sobriety test in front of the camera. *Id.* That is, since the police had no duty to film the field sobriety test, the reason for not doing so is irrelevant to even a motion to suppress evidence (which we do not have here), let alone a motion for discovery sanctions.

¶ 13    Here, no discovery violation occurred because the State neither destroyed nor withheld the squad car video from defendant, but rather turned it over to defendant. Contrary to defendant's assertions, Shaughnessy's decision to conduct defendant's field sobriety tests, outside the view of the squad car camera, was not tantamount to destroying a video recording of the field sobriety tests. Police officers are not required by law to conduct field sobriety tests within the view of a squad car camera. I emphasize that the safety of both the officer and the defendant may often require that field sobriety tests be conducted at a location outside the view of a squad car camera. Standing between two cars on the side of a highway is not the safest place to be. Stopped police cars are often struck, even with emergency lights flashing. There is simply nothing sinister about conducting a field sobriety test somewhere other than immediately in front of a squad car parked on the shoulder of a roadway.

¶ 14    I reject the trial court's and defendant's reliance on *Kladis*, 2011 IL 110920. In *Kladis*, the court held that the State committed a discovery violation when it failed to take the appropriate steps to preserve a squad car video recording of the defendant's traffic stop after the defendant had filed a notice to produce the videotape under Illinois Supreme Court Rule 237 (eff. July 1, 2005). *Kladis*, 2011 IL 110920, ¶¶ 38-39. As a result, police department personnel destroyed the video pursuant to departmental policy. *Id.* Here, unlike in *Kladis*, the State did not allow a discoverable piece of evidence to be destroyed after defendant requested it. Rather, the State turned over the squad car video recording of the traffic stop to defendant.

¶ 15    This holding is consistent with other decisions which have found that "*Kladis* does not stand as authority for imposing a sanction against the prosecution where the requested discovery material never existed in the first instance." *People v. Strobel*, 2014 IL App (1st) 130300, ¶ 11 (holding that no discovery violation supporting the imposition of sanctions occurred where the squad car video turned over to defendant contained no audio because the police officer forgot to activate the audio device in his squad car at the time of the traffic stop). See also *People v. Borys*, 2013 IL App (1st) 111629, ¶ 28 (the holding in *Kladis* did not support barring the police officer's testimony regarding the defendant's traffic stop where no video recording of the stop was created because the officer's squad car was not equipped with video equipment). In the instant case, like in *Borys* and *Strobel*, the State did not allow an

existing, discoverable piece of evidence to be destroyed. Rather, the evidence desired by defendant never existed in the first place.

¶ 16    Because no discovery violation occurred in this case, the trial court erred in sanctioning the State by barring testimony about defendant's field sobriety tests.

¶ 17                                    CONCLUSION

¶ 18    The judgment of the circuit court of Will County is reversed and the cause is remanded for further proceedings.

¶ 19    Reversed and remanded.

¶ 20    JUSTICE LYTTON, specially concurring.

¶ 21    I agree that this cause should be reversed and remanded but for substantially different reasons.

¶ 22    Justice Schmidt conjectures about why the field tests were given outside the view of the video camera. It speculates that it was convenient for safety reasons because accidents often occur to police cars on the side of the road, and, presumably, would squish the officer and defendant between the two cars as opposed to flattening them when the cars roll over them.

¶ 23    Several times during the hearing on the motion, the prosecutor lamented that the reasons for field testing outside the camera view were unknown. His worries were justified. We do not know the rationale, if any, for the location of the field test. We do not know whether the reasoning is sufficient to overcome the legislative intent requiring recording equipment on police cars so "both video and audio must be captured." *Kladis*, 2011 IL 110920, ¶ 31 (citing 20 ILCS 2610/30(b) (West 2008)).

¶ 24    The majority relies on *People v. Olsen*, 2015 IL App (2d) 140267. However, in *Olsen*, a hearing was held in which the officer testified as to the reasons he performed the test in front of the defendant's car. Apparently, the defendant suggested no other reasons and the court accepted the officer's explanation. In this case, we have no evidence as to why the officer conducted the test in front of the defendant's car, and, thus, a remand is appropriate.

¶ 25    On remand, the trial court should hold a hearing to consider whether any reasons proffered for conducting the field tests outside of the camera view are sufficient to deny the motion in light of the principles elucidated in *Kladis*, including assisting "in the truth-seeking process by providing objective evidence of what occurred between the law enforcement officer and the citizen." *Kladis*, 2011 IL 110920, ¶ 34.

¶ 26    JUSTICE HOLDRIDGE, dissenting.

¶ 27    I dissent. Section 30(e) of the State Police Act (Act) provides that "[a]ny enforcement stop resulting from a suspected violation of the *** Code *shall be video and audio recorded*." (Emphasis added.) 20 ILCS 2610/30(e) (West 2012). Section 30(f) of the Act states that recordings made on in-car video camera recording medium "shall be retained" by the Department of the State Police for a storage period of at least 90 days, and "[u]nder no circumstances shall any recording made on in-car video camera recording medium be altered or erased prior to the expiration of the designated storage period." 20 ILCS 2610/30(f) (West

2012). By their plain terms, these statutory provisions require State police to make both an audio and a video recording of any traffic stop resulting from a suspected violation of the Code (like the traffic stop in this case), and to preserve such recordings for at least 90 days.

¶ 28 Following *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 17, and *People v. Borys*, 2013 IL App (1st) 111629, ¶ 25, Justice Schmidt concludes that these statutory provisions are "directory rather than mandatory" because they do not "dictate a particular consequence for a failure to comply with [their] requirements." *Supra* ¶ 12. I disagree. Although we presume that statutory language issuing a procedural command to a government official is "directory" (*i.e.*, not cause for reversal if the government official fails to fulfill the command), that presumption is overcome "when the right the provision is designed to protect would generally be injured under a directory reading." *People v. Delvillar*, 235 Ill. 2d 507, 517 (2009). The statute at issue here protects citizens by requiring audio-visual recordings of traffic stops which could serve as exculpatory evidence in subsequent prosecutions against them for violations of the Code. See *Kladis*, 2011 IL 110920, ¶ 34; see also *id.* ¶¶ 33-34 ("the General Assembly intended that the routine recording of traffic stops by squad car cameras would be of benefit to both citizens and law enforcement agencies by providing an objective record of what occurred during the encounter. *** These enactments express the clear legislative intent that the purpose of recording traffic stops and preserving these recordings for later production is to assist in the truth-seeking process by providing objective evidence of what occurred between the law enforcement officer and the citizen."). These purposes are thwarted when a police officer fails to make such a recording.

¶ 29 Thus, absent a ruling from our supreme court interpreting the statute's requirements as directory rather than mandatory, I believe we should interpret the statute to mean what it says. I find *Olsen* and *Borys* unpersuasive and I would decline to follow those cases.

¶ 30 Moreover, although I agree with Justice Schmidt that there is a distinction between destroying an existing recording and failing to make a recording in the first instance, I do not believe that this distinction should be dispositive of the matter before us. The failure to create an objective audio-visual record of the encounter between the police officer and the driver has the same practical effect as the failure to preserve such a recording; the statute's purpose is frustrated equally in either event. Thus, in my view, the trial court did not abuse its discretion in awarding discovery sanctions based upon Officer Shaughnessy's failure to videotape the defendant's field sobriety test. I agree with Justice Lytton that it is speculative to assume that the officer's decision was motivated by safety concerns. Thus, in my view, the trial court's imposition of sanctions in this case was not "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *Kladis*, 2011 IL 110920, ¶ 23. I would therefore affirm.